# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

FILED

**July 1, 1998**

**Cecil W. Crowson**
**Appellate Court Clerk**

RAZORBACK MARBLE
MANUFACTURING CO., INC., )
)
)
Plaintiff/Appellee, )
)
)
VS. )
)
)
)
D.D. ROBERTS, ROBERTS )
CONSTRUCTION COMPANY, )
NARAN P. PATEL, KUSUM N. )
PATEL, and HERITAGE BANK, )
)
Defendant/Appellant. )

Appeal No.
01-A-01-9709-CH-00512

Montgomery Chancery
No. 96-07-0012

APPEALED FROM THE CHANCERY COURT OF MONTGOMERY COUNTY
AT CLARKSVILLE, TENNESSEE

THE HONORABLE ALEX W. DARNELL, CHANCELLOR

RODGER N. BOWMAN
601 North Second Street, Suite 4
Clarksville, Tennessee 37041-1404
          Attorney for Plaintiff/Appellee

LARRY J. WALLACE
118 Franklin Street
Clarksville, TN 37040
          Attorney for Defendants/Appellants

AFFIRMED AS MODIFIED
AND REMANDED

BEN H. CANTRELL, JUDGE

CONCUR:
TODD, P.J., M.S.
KOCH, J.

# OPINION

In this construction contract dispute, the Chancery Court of Montgomery County granted a judgment plus prejudgment interest to Razorback Marble Manufacturing Company, Inc. On appeal, Roberts Construction Company, Inc. and D. D. Roberts, Individually, raise issues pertaining to the Contractor's Licensing statutes and the Notice of Non-Payments statute. Razorback insists that it was due a larger judgment and a greater award of prejudgment interest.

## I.

Roberts Construction Company, Inc. received the contract to construct a Fairfield Inn in Clarksville. D. D. Roberts, president of the company, entered into a contract with Razorback Marble Manufacturing Company, Inc., an Arkansas corporation, to install marble products in the motel for a total contract price of $39,850.16. Razorback does not have a contractor's license in Tennessee.

Razorback, however, completed its work and some extra work it claims the general contractor's agents authorized and requested. When it did not receive payment, Razorback sued Roberts Construction and Mr. Roberts. The complaint alleged that pursuant to Tenn. Code Ann. § 66-11-145 Razorback gave notice of non-payment to the defendants on May 22, 1996. The defendants' answer admitted the allegation. The chancellor entered judgment in favor of Razorback in the amount of the original contract plus $3,800.75 of extras, and allowed prejudgment interest on the original contract amount to run from December 8, 1996.

## II.

The first three issues raised by the defendants on appeal pertain to Razorback's failure to have a contractor's license in Tennessee. Because of this fact, the defendants allege that Razorback's recovery must be limited to actual documented expenses that can be shown by clear and convincing proof. *See* Tenn. Code Ann. § 62-6-103(b). Since the record does not contain proof of specific expenses, the appellants argue that the judgment in favor of the plaintiff must be reversed.

We note, however, that the issue of the license was not raised as a defense in the defendants' answer. When the question was first asked at the trial, Razorback's lawyer objected because the defense had not been pled. In the ensuing discussion the court immediately ruled that Razorback did not have to have a license if they were doing work for a contractor. There the issue died in the trial court.

Although the issues in this court relate to the question of whether a contractor in Razorback's position needs to be licensed in Tennessee, we think the defense has been waived by the defendants' failure to plead it in the court below. *See* Tenn. R. Civ. Proc. 12.08. The defendants rely on the fact that Razorback did not put on any proof of its actual documented expenses in order to recover anything under Tenn. Code Ann. § 62-6-103(b), but since the licensing statute had not been raised as a defense Razorback was not on notice that it needed to do so. Thus, it would not be fair to reject the claim at this stage based on a defense that was not raised below.

We, therefore, pretermit the question of whether Razorback was required to have a Tennessee license. We do note, however, that in the massive overhaul of the licensing statute in 1994, the legislature repealed the statute that specifically exempted sub-contractors from the statute's requirements. And we find no comparable exemption in the present statute, although the sponsor of the 1994 act stated on the House floor that his bill had no effect on the sub-contractors. We defer

any judgment on the proper interpretation of the statute until the question is squarely presented to us.

## III.

The appellants also rely on Tenn. Code Ann. § 66-11-145(a), which requires a notice of nonpayment to be given to the owner and the contractor contracting with the owner within sixty days of the last day of the month in which work was performed. While we note, parenthetically, that the only consequence of failing to comply with the statute is a loss of lien rights, *see* Tenn. Code Ann. § 66-11-145(c), the complaint in this case alleged that the notice had been given and the defendants' answer admitted it.

For these reasons we think this issue is without merit.

## IV.

The appellants assert that the chancellor erred in admitting evidence of an offer to compromise Razorback's claim. The record reveals that the issue came up in the following way:

> Q. [Mr. Bowman]  Okay.  Mr. Roberts, this FAX contains the total billing for the project as far as Razorback was concerned.  And you received this on April 4th, 1996?
>
> A.  Yes.
>
> Q.  Did you ever call Razorback when you received this and complain to them in any fashion about the work that had been done or the charges that had been made?
> A.  Yes, I called them, even wrote them a letter.
>
> Q.  Could I see the letter that you wrote to them?
>
> A.  I don't have the letter.  I have their reply to my letter.
>
> Q.  Where is the letter that you sent?  Do you know?
>
> A.  I don't know.  We got it lost somewhere.

Q.	May I see the reply to the letter?

A.	Here's the reply to the letter.

Q.	May I see that, please?

(Document passed to Mr. Bowman.)

This was in response to your offer to settle this matter, is that correct?

A.	That's right.

MR. WALLACE: Objection, Your Honor.

THE COURT:  No, he can use it, whatever the letter says.

MR. BOWMAN: Let's make this Exhibit 5 to your testimony.

MR. WALLACE: For the record again, I'm going to object that settlement offers are not admissible.

THE COURT: Of course, the question comes down, counselor, to whether the work was done or not.  And the letter itself may reveal certain things.  It has nothing to do with settlement.

The letter made an exhibit at that point was actually a letter from Razorback to Mr. Roberts and it contained the following:

> We will settle the account on the Fairfield Inn for a certified check of $40,000.00 for the marble work, also a $1,350.00 certified check for plumbing and wood work around the whirlpools.
>
> The $40,000.00 certified check to be made out to Razorback Marble, and the $1,350.00 certified check to be made out to Tony Weatherford.
>
> Payment should be made in 14 working days of receiving this letter.  When the checks are received and deposited, all legal action will be withdrawn.

Tenn. R. Evid. 408 prohibits the introduction of evidence showing an offer or acceptance of a compromise "to prove liability for or invalidity of a civil claim . . . ."  We do not read the exchange in court nor the letter as tending to prove the defendants' liability for Razorback's claim.  There is a hint that Mr. Roberts had

proposed a settlement and the letter contained Razorback's counter-proposal. But the evidence in the record about the contract and the completion of it is so overwhelming that the evidence quoted above is at most harmless. *See* Tenn. R. App. Proc. 36(b).

**V.**

Razorback alleges that the chancellor should have allowed a recovery for all of the extras it performed. The claim was for $7,451.75, of which the chancellor allowed $3,800.75. The defendants' defense is that none of it was authorized by Mr. Roberts.

We find that the record preponderates in favor of a finding that all the work was done and that the agents for the defendants, on the site and in charge of the work, authorized it. Although Mr. Roberts may have had a policy of reserving to himself the right to approve any contract extras, he apparently did not communicate that to Razorback or to his agents on the job. Therefore, the judgment should be increased to include the total of $7,451.75 in extras.

**VI.**

Razorback also asserts that the chancellor erred in not allowing pre-judgment interest from April 4, 1996, the date it billed the defendants for the full amount.

The award of prejudgment interest is governed by Tenn. Code Ann. § 47-14-123, which says that prejudgment interest may be awarded as an element of,

or in the nature of damages, "in accordance with the principles of equity" at a rate of up to 10% per annum. The award is within the sound discretion of the trial judge. *Myint v. Allstate*, ____ S.W.2d ____ (Tenn. 1998). The object is to fully compensate plaintiffs for their losses. *Id.*

We think the trial judge's discretion applies to the time at which the prejudgment interest will begin to run. The chancellor chose December 8, 1996 when the interest began to accrue. He based the date on a finding that some information had been furnished to Mr. Roberts on November 8, 1996 and that thirty days from that date was a reasonable time in which to pay the claim.

We think the December 8, 1996 date should be affirmed. We also think, however, that the interest began to accrue on the whole amount of the claim, $47,301.91.

As modified the judgment of the court below is affirmed and the cause is remanded to the Chancery Court of Montgomery County for the enforcement of the judgment. Tax the costs on appeal to the appellants.

_____
BEN H. CANTRELL, JUDGE

CONCUR:

_____
HENRY F. TODD, PRESIDING JUDGE
MIDDLE SECTION

_____
WILLIAM C. KOCH, JR., JUDGE